and we're going to go on to the last case of the day 21 1266 United States v. Leamon Smith and where is our Miss Winslow? Hi how are you and hi Miss Good morning Your Honor, good morning to all the judges it's nice to be here May it please the court, every traffic stop engages the Fourth Amendment to a lesser or greater degree. In this case what started out as a routine traffic stop ended up in the violation of Mr. Leamon Smith's constitutional right to be free of unreasonable searches and seizures. As the courts I'm sure well aware of the facts in this case Mr. Smith was a passenger in a vehicle that was pulled over. Miss Winslow but I just want to interrupt you to clarify one thing. Are you challenging the legality of the traffic stop itself? It seemed at places in your brief you might be doing that but given what you just said I don't think you are. I am not judge the references to the the vial the the challenges to the the original stop were made below. I am not challenging less legality of that stop at this time. Thank you. It's simply. Can I then ask you if we're gonna focus on what I'll just call search one search two and search three starting with search one is it your position that when officer Holden goes over and asks Mr. Smith to get out of the car from the passenger side that he had no right to pat down Mr. Smith? No that's not my position. I think the law is very clear that he hasn't the officers had an absolute right to to pat down Mr. Smith at the time that he was removed from the vehicle and that's for the purposes of officer safety. Officer safety so at that point he doesn't need to have the Holden doesn't need to have any kind of reasonable suspicion of criminal activity or you know drug dealing or what have you he can pat down for officer safety with this stop by the side of the road. Beginning with the the agreement that the stop was valid the officer then has the right to remove Mr. Smith from the vehicle and pat him down for officer safety purposes. Yes I agree I agree with your premise judge. Okay so so we don't so we can't rely on anything that happened either so there are a few other facts floating around with that first encounter where officer Holden says you know I'm gonna ask you what's going on he wants to talk to him Smith is standing suspiciously close to the car at least in Holden's opinion and and judge Chang credits these statements from from Holden so if the first frisk is okay we begin to get new facts with the second one don't we more we get more opportunity to observe I think we get new facts on both sides of the argument in fact if you were to see my notes I won't show them to you but I have a line down the middle where the facts to one side and the facts to the other officer Holden points to some specific observations beginning with the fact that when he asked for initial account encounter mr. Smith appeared to be as he said shaking like a leaf that that's one side on the video I mean it's this is not some later created thought that he presents only to the district judge no that is absolutely correct judge and I don't disagree with that but at the same time I think that we need to consider the fact that both mr. Smith and the driver of the vehicle were immediately compliant both provided their identifications the driver provided his identification and proof of insurance and they traffic stop at that point escalated because of this the smell of burning cannabis well the the question of whether or not that the cannabis smell wasn't after the fact justification it was certainly raised at the district court level and the district court determined that the lack of previous discussion of the burning cannabis was not dispositive of the issue once mr. Lee mr. Smith gets out of the vehicle the officers then observe him and officer Holden indicates that he sees mr. mr. Lehman mr. Smith limping he immediately before the pat-down right I it's what leads up to the pat-down leads up to the pat-down I just wanna make sure we have our timeline right at the time I like to it leads up to search number two that's correct your honor at that time he notices that there's a limping action and was asked mr. Smith if he's in some way injured mr. Smith model action wasn't it it was more of it was it not only was described in both ways judge side-to-side waddle yes it was described in both ways it's a little difficult for me to identify it as a waddle as opposed to a limp but there was some there was some difference in the way that he was he was walking at that point mr. Smith is able to provide an explanation for why he is he is so a reasonable and honest response was given to the to the officers inquiry which favors against finding that there's any reason for this second search which occurs I believe three and a half three and a half minutes after the first search it's the appearing extremely nervous and then the odd way he was pressing up against the car which you can see on the video I'm glad you're on a raised that issue of pressing up against the car mr. Smith had been pulled over as we know he'd been taken out of the vehicle he had an injured leg something he had described to the officer already and when the officer noticed that he was pressing his pelvis up against the the vehicle he moved away so to the extent that the officer's observation of him pressing against the vehicle could support his finding that there was a gun being secreted someplace his mr. Smith to me well he did judge but again he's got an injured leg at this point so I so there is a valid reason for him to be leaning up against against the car that doesn't count in favor of the officers final observations I think the officer though describes that it's kind of a weird way he has his pelvis up against the car and again there's a hearing about this and the district court finds that this is you know an honest account from I mean maybe not everybody would have found that but that's what the district court so I think that we accept and he you know he does the second frisk and obviously that one also turns up nothing of import a few coins you know maybe not not too much but as this time goes on you know that then there's the exchange about the leg injury yes it's my right leg which is when officer Holden decides maybe I better take a closer look at that side and all of those those facts are accurate judge where I think we need to reach before the end of my argument what we need to reach is some statements contemporaneous statements by officer Holden specifically when he says quote something wasn't right indicating that I'm sorry am I interrupting a judge indicating that he had the belief that something was amiss but he didn't have what's necessary in this case which is specific and articulable facts to support a reasonable suspicion that there was criminal activity or that additional intrusions into into mr. Smith's personal space was warranted by the Fourth Amendment that the officer could have directly conducted the most intrusive search including directly searching the area where the gun was hidden it seems that the officers chose to proceed cautiously so as to minimize the intrusiveness I do not believe that the officer could have engaged in the most intrusive search at the initial what I do believe is that in order for the officer to in order for the officer to have authorization under the Fourth Amendment to continue the search he would have to have some specific and articulable facts those are lacking here officer Holden just simply stated and he stated this in testimony and can be right and that he couldn't let it go the officers subsequent self-serving statements that he did not want to intrude into mr. Smith's constitutional rights any further are not supported by what we see on that video in fact he did he did exceed his authority to intrude upon mr. mr. Smith's person and during that search without the necessary quantum of evidence for this reason we ask that the court reverse and remand with instructions thank you and I will give you your two minutes so he's thinking about it thank you thank you your honor afternoon and may it please the court the district court properly denied the defendant's motion to suppress after finding that the frisks in this case were supported by reasonable suspicion to believe that the defendant was armed and dangerous the question is whether where's the evidence of armed and dangerous I mean what one gets the sense of is it first maybe there's just the brief risk when officer Holden goes up to the side of the car and has mr. Smith get out that miss Winslow has said yes of course officers can do that for officer safety but then there's all this talk at the suppression hearing at least you know was there this smell of fresh cannabis was there the smell of burnt cannabis and then there is the very peculiar aspect of this case where officer Holden says I'll uncuff one of your hands and let you get out whatever it is you have which makes it sound like he thinks it's drugs I I would be very surprised in today's difficult world you know if officers are people that they suspect of having a weapon which may even have ammunition in it to just reach on down and take it out yes your honor the the evidence is very strong that the defendant was concealing something and the officer reasonably determined or the objective facts supported that that's something reasonably could have been a weapon so but we have doesn't he isn't it leaning though that it reasonably might have been you know some some packets of cocaine or you know they can be hard to to the you know the touch I think that the Second Circuit in Weaver said it very well that the officers under Supreme Court precedent are not required to exclude the possibility of innocent conduct and they are not required therefore to exclude the possibility of other nefarious conduct there were many facts here that were consistent with this being a weapon as opposed to as opposed to a gun I'm sorry a weapon as opposed to drugs so first of all it appeared to be an object with some heft to it but it was heavy it was falling down his pants it was becoming dislodged that's consistent with the way to make those findings the district being that specific yes I don't think that the district court made specific findings with regards to that but that is a kind of commonsensical inference from what was going on here it's also important to note that at the beginning of this stop the officer made a comment about whether that whether the defendant had loud he said you know if it's loud we can deal with that suggesting that when the defendant chose not to produce that you know produce something in his pocket that it was more likely to be a gun rather than drugs or more likely not to be marijuana I mean loud didn't as I understand it that's some term for for amphetamine or heroin or you know cocaine or any of the other things people might be carrying correct and that's what the officer did testify that it is a word for cannabis and that's what he was referring to because it was a ticketable offense you know ultimately the district court what the district court did credit was the officer's explanation that when he offered to unhandcuff one of those arms or hands to reach into the pockets he was trying to report trust with the defendant and that in it in his experience and and this is in shown by the BWC that there were many officers around that it he didn't see it as at that moment unnecessarily dangerous to unhandcuff that one arm to allow the defendant to reach in and and ultimately it's significant that the defendant did not accept that opportunity so we're actually viewing this in the content at the time of that third which was a number of minutes later and by that time the officer had conducted the second press which which consisted of jiggling the leg and explained that after he did that and when the defendant then walked back to the police vehicle you know it appeared that an item became dislodged and he was having an increased amount of difficulty being able to walk with that item right it's consistent with there's still something concealed in his pants right he didn't take the opportunity to be you and there was strong reason to believe at that point that that was a weapon that could pose officer safety concerns that the officers did not need to negate any possibility that it was something else at that point how did the officer miss it during the second pat down well I think that the first two frisks were very limited as judge Rogner noted so the firearm as the officer explained at suppression hearing was being held in the flap of his underwear it was it was like in a very unique position and his pants were sagging and so when he did the initial risk focused on what he explained were hot spots you know he frisked the waistband and kind of near the crotch area and ordinarily if there was a firearm there I think that that may have you know touched upon it but the way that the pants were sagging meant that when he reached into where the bottom of the like the groin area of that the pants that was not where the defendant's body groin area was right and so then he proceeded to the second frisk where he jiggled the leg but you know because the gun was being held into that flap of the of the underwear it didn't come loose and it just it seems like the facts are consistent with it just gradually becoming looser and looser over the course of these events which is consistent with the defendants limp and his strange gait as well as his you know his repeated conduct in terms of pressing his pelvis up against any vehicle that he was near including both the police vehicle as well as that left the back that Lexus even after being directed not to do so by the officer these facts in particular the gait and pressing the pelvis up against the reasonable suspicion to believe that the defendant was armed and justified the frisk that produced the firearm for those reasons unless there are further questions from the panel the government asks that this court from the district courts judgment thank you two minutes thank you your honor I think that the first comment I'd like to make is is with respect to judge woods question regarding the the reasonableness of offering to take the handcuffs off an individual who may have been may have been armed I agree with your your honor's suggestion and I firmly agree with the argument that was made below and in this court that it's unreasonable to conclude that a Chicago police officer would offer to unhandcuff an individual who they believed or had any reasonable suspicion to believe was carrying a weapon loaded or otherwise in my humble opinion the further question about whether or not that the it was drugs hang that he might have been concealing that's certainly always a possibility at that point there's no issue of officer safety and it's a question of whether or investigating and searching in order to determine whether there's other criminal activity going on in this case the officers own statements just simply do not support such a finding the officers statements without using the word were to his partner and subsequently to the court he had a hunch that something was going something was amiss and as we all know that the hunch is not sufficient a hunch is not reasonable suspicion and for that reason we again ask that this court reverse the district court's judgment and remand with instructions okay well thank you very much case will be taken under advisement miss Winslow you were appointed by the court unless and as always we did the great job that you do for your clients and the same is absolutely true of miss Castanek thank you for what you do for the government it is really appreciated by us to have the two of you before us be well take care of yourselves and thank you very much thank you thank you to all the jurors this court is we're done